

**NAILAH K. BYRD
CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT
April 8, 2021 17:26**

By: BRADLEY LEVINE 0090286

Confirmation Nbr. 2224214

ALEXANDRA DAVIS             CV 21 946077

    vs.

                                **Judge:** HOLLIE L. GALLAGHER

WATERSTONE PROPERTY MANAGEMENT LLC, ET AL.

Pages Filed: 16



IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| ALEXANDRA DAVIS<br>2750 East Overlook Road<br>Cleveland Heights, OH 44106<br><br>      Plaintiff,<br><br>v.<br><br>WATERSTONE PROPERTY<br>MANAGEMENT LLC<br>14077 Cedar Road #204<br>Cleveland, OH 44118<br><br>CATHERINE WASSERSTEIN<br>14077 Cedar Road #204<br>Cleveland, OH 44118<br><br>NED WASSERSTEIN<br>14077 Cedar Road #204<br>Cleveland, OH 44118<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT FOR SEXUAL<br>HARASSMENT, DISABILITY<br>DISCRIMINATION, HOSTILE WORK<br>ENVIRONMENT, RETALIATION,<br>DEFAMATION, INTENTIONAL<br>INFLICTION OF EMOTIONAL<br>DISTRESS, ASSAULT, NEGLIGENT<br>TRAINING, RETENTION &<br>SUPERVISION, UNPAID OVERTIME,<br>AIDING & ABETTING, INTENTIONAL<br>SPOLIATION OF EVIDENCE**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Alexandra Davis ("Plaintiff") alleges as follows for her Complaint against Defendants Waterstone Property Management LLC ("Waterstone"), Catherine Wasserstein ("Mrs. Wasserstein"), and Ned Wasserstein ("Mr. Wasserstein") (collectively "Defendants"):

1. Plaintiff worked for Defendants in Cuyahoga County, Ohio.

2. Waterstone is an Ohio limited liability company, doing business in Cuyahoga County, Ohio.

3. Waterstone's revenues exceed $500,000 per year.

4. Waterstone is an enterprise engaging in interstate commerce.

5. Mrs. Wasserstein is a co-owner of Waterstone.

6. Mr. Wasserstein is a co-owner of Waterstone and Mrs. Wasserstein's husband.

7. Defendants were an employer of Plaintiff.

8. Defendants employed Plaintiff from June 8, 2020 until February 19, 2021.

9. Plaintiff was disabled by dyslexia and anxiety during her employment with Defendants.

10. Plaintiff's impairments substantially limited one or more of her major life activities.

11. Plaintiff's dyslexia required her to carefully proofread her work to ensure everything was spelled correctly because she would invert numbers and words while writing.

12. Plaintiff informed Mr. Wasserstein that Plaintiff was disabled by dyslexia after accepting an offer of employment at the conclusion of her job interview with Defendants.

13. On or about July 27, 2020, Plaintiff informed Mr. Wasserstein that Plaintiff was disabled by anxiety.

14. Defendants were aware of Plaintiff's disabilities.

15. Plaintiff has a record of impairments.

16. Defendants regarded Plaintiff as having impairments.

17. Plaintiff was qualified for her job.

18. Plaintiff could perform the essential functions of her job with or without a reasonable accommodation for her disabilities.

19. Defendants' employment policies discriminated against disabled workers. For example, one of Defendants' policies read, "[C]hronic health problems will be frowned upon."

20. On Plaintiff's first day of employment, Mr. Wasserstein became so enraged with Plaintiff for working slowly because of her dyslexia that he screamed obscenities. Then, with the intent to put Plaintiff in apprehension of immediate harmful or offensive contact, Mr. Wasserstein smashed a laptop computer on the floor near Plaintiff with such force that Mr. Wasserstein destroyed it.

21. On another occasion, Mr. Wasserstein startled Plaintiff with the intent to put her in apprehension of immediate harmful or offensive contact by slamming a clipboard so hard on the surface of her desk that the room resonated from the sound of the impact.

22. Mr. Wasserstein routinely expressed his frustration with Plaintiff's dyslexia by accusing her of working slowly while she carefully proofread her work to avoid inverting numbers and words.

23. During a staff meeting with Mr. Wasserstein, an employee named Ebony Spano complained to Mr. Wasserstein that he scared Plaintiff when he slammed and broke things in the office. Mr. Wasserstein asked Plaintiff, "Do I scare you?" Plaintiff responded, "Yes, I'm scared of you."

24. Mrs. Wasserstein is sexually attracted to women.

25. Mr. and Mrs. Wasserstein sexually harassed Plaintiff on a regular basis.

26. Mr. Wasserstein sexually harassed Plaintiff by interrogating her about her dates with other men outside of work and by leaving inappropriate notes near Plaintiff's desk about male anatomy, including a reference to a "dick" and an "ass."

27. In January 2021, Mrs. Wasserstein shared with Mr. Wasserstein a photograph of Plaintiff in a bikini taken from her social media.

28. In the photograph from Plaintiff's social media, a surgical scar was visible on the side of Plaintiff's breast.

29. Mrs. Wasserstein sexually harassed Plaintiff by texting the photograph to her and falsely insinuating that Plaintiff's surgical scar was actually her exposed nipple.

30. Mrs. Wasserstein texted Plaintiff, "Is that your nipple? I mean I think it looks like it."

31. Plaintiff texted Mrs. Wasserstein, "No it's not, I have a scar from a surgery. . . ."

32. In addition to Defendants' actual knowledge of Plaintiff's dyslexia and anxiety, Defendants perceived Plaintiff as being disabled because of her surgical scar.

33. Mr. and Mrs. Wasserstein persisted in sexually harassing Plaintiff by sharing the photograph from Plaintiff's social media with her coworkers.

34. Mr. and Mrs. Wasserstein defamed Plaintiff by spreading a false, malicious, and unprivileged rumor to her coworkers by stating that Plaintiff had uploaded an indecent photograph of her exposed nipple on social media.

35. Mrs. Wasserstein also regularly discussed Plaintiff's breast size with her coworkers.

36. Defendants installed a video camera pointed directly at Plaintiff's desk.

37. The realization that Mr. and Mrs. Wasserstein could use their video camera to gawk at Plaintiff's body provoked her anxiety.

38. Plaintiff occasionally exercised near her desk for a few seconds at a time to keep herself energized during the workday.

39. On several occasions, Mr. Wasserstein described to Plaintiff the exercises he had watched her perform on the video camera as proof of Mr. Wasserstein's voyeurism.

40. During an office holiday party, Mrs. Wasserstein played a video of Plaintiff to humiliate her in front of coworkers.

41. Defendants employed Bob Pajek ("Pajek") as a Maintenance Manager.

42. Pajek sexually harassed Plaintiff by calling her "sweetheart" and "little girl."

43. Mr. and Mrs. Wasserstein knew that Pajek was sexually harassing Plaintiff and creating a sexually hostile work environment.

44. Mrs. Wasserstein texted Plaintiff that Pajek acted "like he still likes you" and Mrs. Wasserstein felt that was "unacceptable."

45. Mrs. Wasserstein also texted Plaintiff that Pajek "is creating a hostile environment."

46. Despite Defendants knowledge that Pajek was sexually harassing Plaintiff and creating a sexually hostile work environment, Defendants failed to take immediate and adequate corrective action to protect Plaintiff from further sexual harassment.

47. Defendants did not counsel, reprimand, discipline, or terminate Pajek in response to any of the sexual harassment that Mr. and Mrs. Wasserstein witnessed, or in response to any of Plaintiff's complaints.

48. Pajek also sexually harassed another employee named Sarah Sizer ("Sizer").

49. Plaintiff texted her coworker Latifa El, "It's just not a normal work environment in any way and this bob [sic] thing bothers me not cause of bob [sic] even but the fact that I've put in complaints, Sarah [Sizer] has put in complaints about feeling harassed and it's ignored."

50. Sizer complained to Defendants about being sexually harassed by Pajek.

51. Plaintiff submitted at least three written complaints to Defendants about being sexually harassed at work.

52. Plaintiff's last written complaint to Defendants read as follows (emphasis added):

> Cat [Wasserstein] and Stacey [Kovatch] **were discussing breast size in general and then mine specifically**, and further more proceeded to discuss said photo, the same that the copy was saved and sent to me, and **it was reiterated that [Mrs. Wasserstein] thought it looked like a nipple even though I had said it was a scar.** They then proceeded to discuss my past surgery . . . in front of the entire office . . . .
>
> Speaking of **sexual harassment** from employees, I as well as other female employees, have **filed several complaints** against certain maintenance techs for calling us inappropriate names such as "girl" and "sweetie." However, **these harassment claims have been ignored** for months. I do not feel comfortable in an environment where I feel **ongoing harassment is ignored over and over again** . . . .
>
> I was never informed there was a **camera recording my actions** throughout the day and positioned directly over my desk. I only

> discovered it one morning when Ned [Wasserstein] was talking about his green suede shoes .... Regarding the video, the fact that it is ... for personal entertainment .... This **felt like a violation** and was **highly offensive** to me to be used as entertainment to be shared with the entire office when I was recorded without my knowledge or consent....
>
> **I feel incredibly violated** however by the discussion of my body, the sharing of photos, and discussion of my medical history/surgery among the office ... **I feel beyond targeted** regarding inner office harassment....

53. Defendants treated Plaintiff with extreme and outrageous conduct that went beyond all possible bounds of decency and was utterly intolerable in a civilized society.

54. Defendants' conduct towards Plaintiff damaged her reputation and caused her to suffer severe emotional distress.

55. Plaintiff received treatment from a mental health professional during her employment with Defendants because of the hostile work environment.

56. On February 19, 2021, Defendants terminated Plaintiff.

57. Defendants' purported reason for terminating Plaintiff was a mere pretext.

58. Defendants terminated Plaintiff in retaliation for her complaints about sexual harassment, disability discrimination, and a hostile work environment.

59. Defendants replaced Plaintiff with a similarly-situated but non-disabled employee named Paige Miller ("Miller").

60. Miller is the granddaughter of Mrs. Wasserstein from a prior relationship.

61. Defendants' employment policies violated the Fair Labor Standards Act. For example, one of Defendants' policies read, "30-minute lunch break ... [t]ake it because it is going to be deducted."

62. Defendants scheduled Plaintiff to work at least eight and a half hours per day, Monday through Friday, for at least forty-two and a half hours per week.

63. Plaintiff never clocked out for lunch during her employment with Defendants.

64. Plaintiff worked through all of her lunches.

65. On a daily basis, Plaintiff engaged in substantial duties for the benefit of Defendants while she worked through lunch.

66. On a daily basis, Plaintiff started working early before clocking in and continued working for Defendants after clocking out for the day.

67. Despite the hours that Plaintiff worked through lunch, Defendants automatically deducted thirty minutes from her pay so that only eight hours of work were reflected for each day worked.

68. Despite the hours that Plaintiff worked for Defendants before and after clocking in and out for the day, Defendants only paid Plaintiff for eight hours of work for each day worked.

69. Defendants knew or should have known that Plaintiff worked through lunch, and that Plaintiff worked before and after clocking in and out for the day, because Defendants monitored Plaintiff's activities on a video camera and Defendants observed Plaintiff working.

70. Despite Defendants' actual and constructive knowledge, Defendant failed to pay Plaintiff her overtime wage for the hours she worked over forty hours each week.

71. On February 25, 2021, Plaintiff's counsel mailed a letter to Defendants that read, in pertinent part, "[P]lease preserve all documents, emails, and electronic information

related to [Plaintiff] or her employment with you. Failure to do so may result in a claim of spoliation of evidence being raised against you."

72. Upon information and belief, Defendants deleted relevant evidence from Plaintiff's work computer after February 25, 2021.

73. This Court has subject matter and personal jurisdiction over the claims raised in this Complaint.

74. Venue is proper in Cuyahoga County, Ohio.

75. Plaintiff has suffered damages in excess of $25,000.

76. Plaintiff has hired the undersigned counsel and has agreed to pay them reasonably attorney's fees and costs of they are successful on one or more of the claims set forth herein.

## COUNT I
## SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

77. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 76 above.

78. Plaintiff brings this action under Ohio Revised Code Sections 4112.02 and 4112.99.

79. Mr. Wasserstein, Mrs. Wasserstein, and Pajek sexually harassed Plaintiff.

80. Plaintiff was subjected to a sexually hostile work environment.

81. Plaintiff has been damaged by Defendants' sexual harassment and sexually hostile work environment.

82. Defendants' conduct is the cause of Plaintiff's damages.

83. Defendants acted with actual malice, entitling Plaintiff to punitive damages and her attorney's fees and costs.

## COUNT II
## SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT
### Under Common Law

84. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 83 above.

85. Mr. Wasserstein, Mrs. Wasserstein, and Pajek sexually harassed Plaintiff.

86. Defendants knew or should have known that Mr. Wasserstein, Mrs. Wasserstein, and Pajek posed an unreasonable risk of harm to Plaintiff.

87. Plaintiff was subjected to a sexually hostile work environment.

88. Plaintiff has been damaged by Defendants' sexual harassment and sexually hostile work environment.

89. Defendants' conduct is the cause of Plaintiff's damages.

90. Defendants acted with actual malice, entitling Plaintiff to punitive damages and her attorney's fees and costs.

## COUNT III
## DISABILITY DISCRIMINATION/HOSTILE WORK ENVIRONMENT

91. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 90 above.

92. In violation of Ohio Revised Code Sections 4112.02 and 4112.99, Defendants discriminated against Plaintiff because of her disabilities, because of her record of being disabled, or because of perceived disabilities.

93. Plaintiff was qualified for her job.

94. Defendants discriminated against Plaintiff because of her disabilities.

95. Plaintiff was subjected to a hostile work environment by Defendants.

96. Plaintiff suffered an adverse employment action when Defendants terminated Plaintiff because of her disabilities, because of her record of being disabled, and because Defendants regarded Plaintiff as disabled.

97. Plaintiff has been damaged by Defendants' disability discrimination.

98. Defendants' conduct is the cause of Plaintiff's damages.

99. Defendants acted with actual malice, entitling Plaintiff to punitive damages and her attorney's fees and costs.

## COUNT IV
## RETALIATION

100. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 99 above.

101. Plaintiff brings this action under Ohio Revised Code Sections 4112.02(I) and 4112.99.

102. Plaintiff opposed and complained about Defendants' unlawful employment practices.

103. Plaintiff had a reasonable belief that Defendants were engaging in unlawful employment practices.

104. Defendants retaliated against Plaintiff by terminating her employment.

105. Plaintiff's opposition and complaints about Defendants' unlawful employment practices caused Defendants to terminate Plaintiff's employment.

106. Defendants had no legitimate business justification for terminating Plaintiff.

107. Plaintiff has been damaged by Defendants' retaliation.

108. Defendants' conduct is the cause of Plaintiff's damages.

109. Defendants acted with actual malice, entitling Plaintiff to punitive damages and her attorney's fees and costs.

## COUNT V
## DEFAMATION

110. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 109 above.

111. Plaintiff is a private figure.

112. Mr. and Mrs. Wasserstein, acting in the course and scope of their employment as agents of Waterstone, falsely stated to coworkers that Plaintiff's had uploaded an indecent photograph of her exposed nipple on social media.

113. The false statements made by Mr. and Mrs. Wasserstein caused injury to Plaintiff.

114. The false statements made by Mr. and Mrs. Wasserstein caused special harm to Plaintiff.

115. In making the false statements about Plaintiff, Mr. and Mrs. Wasserstein acted with negligence or actual malice.

116. Plaintiff is entitled to punitive damages and her attorney's fees and costs.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

117. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 116 above.

118. Mr. Wasserstein and Mrs. Wasserstein intentionally or recklessly acted in an extreme and outrageous manner towards Plaintiff.

119. Mr. Wasserstein and Mrs. Wasserstein's actions caused Plaintiff to suffer severe emotional distress as well as mental injury.

120. Plaintiff has been damaged by Mr. Wassersetin and Mrs. Wasserstein's intentional infliction of emotional distress.

121. Mr. Wasserstein and Mrs. Wasserstein acted with actual malice, entitling Plaintiff to punitive damages and her attorney's fees and costs.

## COUNT VII
## ASSAULT

122. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 121 above.

123. Mr. Wasserstein intended to put Plaintiff in apprehension of immediate harmful or offensive contact by smashing a laptop computer on the floor near her and by slamming a clipboard on her desk.

124. Plaintiff was aware of Mr. Wasserstein's intention to put Plaintiff in apprehension of immediate harmful or offensive contact, and Plaintiff was put in apprehension of immediate harmful or offensive contact.

125. Plaintiff has been damaged by Mr. Wasserstein's assault.

126. Mr. Wasserstein's assault is the cause of Plaintiff's damages.

127. Mr. Wasserstein acted with actual malice, entitling Plaintiff to punitive damages and her attorney's fees and costs.

## COUNT VIII
## NEGLIGENT TRAINING, RETENTION & SUPERVISION

128. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 127 above.

129. Waterstone had a duty to use due care in training, retaining, and supervising Mr. Wasserstein, Mrs. Wasserstein, and Pajek.

130. Waterstone breached its duty to use due care in training, retaining, and supervising Mr. Wasserstein, Mrs. Wasserstein, and Pajek.

131. Plaintiff has been damaged by Waterstone's failure to use due care.

132. Waterstone's conduct is the cause of Plaintiff's damages.

## COUNT IX
## UNPAID OVERTIME

133. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 132 above.

134. Defendants have violated Ohio Revised Code Sections 4111.03 and 4111.10 and the Fair Labor Standards Act by not paying Plaintiff overtime wages for hours worked more than forty in a week.

135. Defendants' conduct with regard to not paying overtime to Plaintiff was willful.

136. Plaintiff has been damaged by Defendants' nonpayment of overtime wages.

137. Plaintiff is entitled to liquidated damages of one times overtime not paid pursuant to the Fair Labor Standards Act.

138. Defendants are liable for Plaintiff's costs and reasonable attorney's fees pursuant to Ohio Revised Code Section 4111.10 and the Fair Labor Standards Act.

## COUNT X
## AIDING AND ABETTING

139. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 138 above.

140. Plaintiff brings this action under Ohio Revised Code Sections 4112.02(J) and 4112.99.

141. Defendants have aided in sexually harassing Plaintiff, discriminating against Plaintiff because of her disabilities, creating a hostile work environment, and retaliating against Plaintiff.

142. Defendants have abetted in sexually harassing Plaintiff, discriminating against Plaintiff because of her disabilities, creating a hostile work environment, and retaliating against Plaintiff.

143. Plaintiff has been damaged by Defendants' aiding or abetting.

144. Defendants' conduct is the cause of Plaintiff's damages.

145. Defendants acted with actual malice, entitling Plaintiff to punitive damages and her attorney's fees and costs.

## COUNT XI
## INTENTIONAL SPOLIATION OF EVIDENCE

146. Plaintiff re-alleges each allegation set forth in paragraphs 1 to 145 above.

147. Pending or probable litigation against Defendants involving Plaintiff existed.

148. Defendants had knowledge that litigation involving Plaintiff existed or was probable.

149. Defendants willfully destroyed relevant evidence by deleting it from Plaintiff's work computer with the intent to disrupt Plaintiff's case.

150. Plaintiff's case has been disrupted because she can no longer rely on the deleted relevant evidence from her work computer to support her claims or to defeat Defendants' defenses.

151. Defendants' conduct is the cause of Plaintiff's damages.

152. Plaintiff is entitled to an adverse inference at trial against Defendants and monetary sanctions against Defendants.

153. Defendants acted with actual malice, entitling Plaintiff to punitive damages and her attorney's fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendants for her lost wages, reinstatement or front pay, lost fringe benefits, liquidated damages, non-economic damages such as emotional pain, suffering, inconvenience, physical anguish, and loss of enjoyment of life, any other compensatory damages, punitive damages, prejudgment interest at the statutory rate, post-judgment interest, attorney's fees and costs, and all other relief to which she is entitled.

JURY TRIAL DEMANDED.

Respectfully submitted,

/s/ Brad Levine
Stephan I. Voudris, Esq.
Supreme Court No. 0055795
Brad Levine, Esq.
Supreme Court No. 0090286
Voudris Law LLC
8401 Chagrin Road, Suite 8
Chagrin Falls, OH 44023
svoudris@voudrislaw.com
blevine@voudrislaw.com
440-543-0670
440-543-0721 (fax)
*Counsel for Plaintiff*